JAMES ANDREW HINDS, JR. (SBN 71222)
jhinds@jhindslaw.com
PAUL R. SHANKMAN (SBN 113608)
pshankman@jhindslaw.com
HANNA B. RAANAN (SBN 261014)
hraanan@jhindslaw.com
LAW OFFICES OF JAMES ANDREW HINDS, JR.
21515 Hawthorne Blvd.
Suite 1150
Torrance, California 90503
Telephone: (310) 316-0500
Facsimile: (310) 792-5977

Attorneys for Aeolus Down Inc.,
Debtor and Debtor-In-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>AEOLUS DOWN INC.,<br><br>Debtor and Debtor-In-Possession. | CASE NO. 6:09-bk-22497 RN<br><br>(Chapter 11)<br><br>**MOTION FOR APPROVAL OF STIPULATION FOR INTERIM USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF WEI DONG IN SUPPORT THEREOF**<br><br>DATE:    January 19, 2010<br>TIME:    2:00 p.m.<br>PLACE:   Courtroom # 301, 3420<br>         Twelfth Street, Riverside,<br>         California 92501-3819<br><br>**Counsel for Debtor to Appear at:**<br>Courtroom 1645, Roybal Federal Building, 255 East Temple Street Los Angeles, CA 90012 |

**TO THE HONORABLE RICHARD M. NEITER, UNITED STATES BANKRUPTCY JUDGE, TO THE OFFICE OF THE UNITED STATES TRUSTEE, PARTIES-IN-INTEREST AND THEIR RESPECTIVE COUNSEL OF RECORD:**

///

1.

**PLEASE TAKE NOTICE** that a hearing will be held before the Honorable Richard M. Neiter, United States Bankruptcy Judge, in Courtroom #301 of the above entitled court located at 3420 Twelfth Street, Riverside, California 92501-3819 (counsel for the Debtor will appear at the Judge Neiter's Courtroom located at 255 E. Temple Street, CTRM # 1645, Los Angeles, California 90012-3300) on Tuesday, January 19, 2010, at 2:00 p.m., to consider the Debtor's Motion for Approval of Stipulation for Interim Use of Cash Collateral (hereinafter referred to as the "Cash Collateral Motion"). This Cash Collateral Motion is brought as a result of the Debtor's business need to pay post-petition expenses of the Estate, to continue operations, and to stabilize its business operations with continued access to the cash collateral subject to the pre-petition perfected lien of the Secured Creditor Zhejiang Hengdi Bedding Co., Ltd. and Zhejiang LiuQiao Feather Co. Ltd. (hereinafter collectively referred to as the "ZHBC"). A true and correct copy of the fully executed Interim Cash Collateral Stipulation (subject to notice and this Court's approval) is attached hereto as Exhibit "1" and is incorporated herein by this reference as if set forth in full (hereinafter referred to as the "Cash Collateral Stipulation" or "Stipulation").

This Cash Collateral Motion is brought pursuant to 11 U.S.C. §§ 105, 361, 363, and 364 and will be based upon the Notice of Motion, this Motion, the attached Memorandum of Points and Authorities, the attached Declaration of Wei Dong, the attached Exhibit, all of the papers and records on file in this case, all matters of which this Court may properly take judicial notice, and such other evidentiary matters as may be presented to the Court regarding this Motion.

Counsel for the Debtor is serving a separate Notice of Motion upon the Office of the United States Trustee, all creditors (secured and unsecured), all parties requesting special notice, all parties-in-interest, and their counsel of record by mail on at least 21-days notice in accordance with Local Bankruptcy Rule 9013-1(d)(2). Any party requesting a copy of and Motion with the attached copy of the Cash Collateral Stipulation and all Exhibits thereto may request same from the Debtor's counsel.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f)(1), any party in interest intending to oppose the relief sought in this Cash Collateral Motion must file an opposition in writing and in compliance with said Rule and serve same upon counsel for the Debtor, counsel for ZHBC, and the Office of the United States Trustee not later than 14 days before the hearing date. Failure to file and serve a written opposition in accordance with Local Bankruptcy 9013 (f)(1) may constitute consent to the relief requested herein.

**WHEREFORE**, the Debtor respectfully requests that this Court: **(i)** enter an Order approving the Stipulation for Interim Use of Cash Collateral for the period January 1, 2010 through June 30, 1020; **(ii)** find that notice of this Cash Collateral Motion is appropriate under the circumstances; and **(iii)** grant such other and further relief as the Court deems just and proper.

DATED: December 19, 2009      Respectfully submitted,

JAMES ANDREW HINDS, JR.
PAUL R. SHANKMAN
HANNA B. RAANAN
LAW OFFICES OF JAMES ANDREW HINDS, JR.

By:   /s/ James Andrew Hinds, Jr.
         JAMES ANDREW HINDS, JR.
Attorneys for Aeolus Down Inc., Debtor and Debtor-In-Possession

MOTION FOR APPROVAL OF STIPULATION FOR INTERIM USE OF CASH COLLATERAL

## TABLE OF AUTHORITIES

**PAGE(s)**

***CASES:***

In re Dunes Casino Hotel
  (Bankr. D.N.J. 1986) 69 B.R. 784 .......................................... 10

In re JKJ Chevrolet, Inc.
  (Bankr. E.D. Va. 1995) 190 B.R. 542 ........................................ 9

In re Kost
  (Bankr. D.Wyo. 1989) 102 B.R. 829, 831. ................................... 10

In re Mellor
  (9th Cir. 1984) 734 F.2d 1396 ........................................ 10, 11

In re Roane
  (Bankr. E.D.Pa. 1981) 8 B.R. 997, 1000, (Bankr. E.D. Pa. 1981) ............. 11

In re Scottsdale Medical Pavilion
  159 B.R. 295 (9th Cir. B.A.P. 1993) ........................................ 9

***STATUTES:***

11 U.S.C.

§102(a)(A) ................................................................. 12

§ 361 ............................................................ 2, 7, 10, 11

§ 363 ............................................................ 2, 9, 10, 11

§ 363(a) ................................................................. 5, 9

§ 363(b)(2) ............................................................. 9, 15

§ 363(c)(2) ............................................................. 7, 9

§ 363(e) ................................................................... 9

§ 503(b)(1) ............................................................... 10

***RULES:***

Rule 4001 ............................................................... 7, 10

Rule 9013 (f)(1) ........................................................... 3

***LOCAL BAKRUPTCY RULES:***

Rule 4001-1 ................................................................ 7

Rule 9013-1(d)(2) .......................................................... 3

Rule 9013-1(d)(2) .......................................................... 2

## TABLE OF CONTENTS

**PAGE(s)**

I.   STATEMENT OF FACTS ............................................. 4

II.  OUTLINE OF THE TERMS OF THE CASH COLLATERAL
     STIPULATION ..................................................... 6

III. THE DEBTOR SHOULD BE ALLOWED TO USE CASH COLLATERAL AS THE
     SECURED CREDITOR HAS CONSENTED TO ITS USE AND IS ADEQUATELY
     PROTECTED ....................................................... 8

IV.  NOTICE OF THIS MOTION IS APPROPRIATE UNDER THE
     CIRCUMSTANCES ................................................. 12

V.   CONCLUSION ..................................................... 11

VI.  DECLARATION OF WEI DONG ....................................... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

1.  On June 8, 2009 (hereinafter referred to as the "Petition Date"), the Debtor Aeolus Down Inc. (hereinafter referred to as either "ADI" or the "Debtor") filed its voluntary petition under chapter 11 of Title 11 of the United States Code. Since the Petition Date the Debtor has operated its business as the Debtor-In-Possession under §§ 1107 and 1108 of the Bankruptcy Code. (See Declaration of Wei Dong (hereinafter referred to as the "Dong Dec.) served and filed herewith at ¶ 2.)

2.  ZHBC is the holder of a pre-petition claim against the Debtor in the amount of approximately $6.049 million (hereinafter referred to as the "Claim")[1]. ZHBC claims that, on the basis of **(1)** a Credit and Security Agreement between ZHBC and the Debtor under which ZHBC extended trade credit to the Debtor in return for security over all of the Debtor's assets (as defined in the Credit and Security Agreement) and **(2)** the filing of a financing statement with the California Secretary of State on or about November 26, 2008, to perfect ZHBC's security interest, ZHBC has a perfected lien upon all of the cash, inventory, equipment, and other items identified under the Credit and Security Agreement and the UCC Financing Statement (collectively referred to as the "Collateral"), which includes all of the cash presently held or which will in the future come into the Debtor's possession (hereinafter referred to as the "Cash Collateral"). While reserving its rights, the Debtor has requested that ZHBC permit it to use sash collateral in accordance with the terms and conditions set forth in the attached Cash Collateral Agreement (see Exhibit "1" hereto).

///

---

[1] As previously noted to the Court and parties-in-interest, ZHBC's books show a pre-petition account receivable of approximately $7.5 million based on goods (1) in manufacture, (2) at the port in China, (3) on ships in transit, or (4) in the U.S Customs as of the Petition Date. For purposes of this Revised and Amended Stipulation the parties agree that the balance shown on the books of the Debtor will control without prejudice to ZHBC making a different claim in the case.

4.

3.    Specifically, the Debtor and ZHBC agree that all cash or cash equivalents currently held by the Debtor or that may come into the Debtor's possession, are "Cash Collateral" as that term is defined in 11 U.S.C. § 363(a) and, as such, subject to future review and analysis by the Debtor and Orders of this Court. Thus, ZHBC is entitled to the benefits of § 506(b) of the Bankruptcy Code. By virtue of ZHBC's perfected security interests in the Collateral, ZHBC has a presumptive interest in "Cash Collateral" within the meaning of 11 U.S.C. § 363(b). (Dong Dec. at ¶¶ 3 - 6.)

4.    By Order entered on September 4, 2009, this Court approved the Debtor's Fourth Revised and Amended Stipulation for Use of Cash Collateral (hereinafter referred to as the "Initial Cash Collateral Stipulation"). (See Docket Item # 110.) The Initial Cash Collateral Stipulation was for the period June 8, 2009 through December 31, 2009. Prior to entry of the Order approving the Initial Cash Collateral Agreement, the Initial Cash Collateral Agreement was subject to extensive court review and questions from judgment creditors Shaoxing City Maolong Wuzhong Down Products Co., Ltd., and Shui Yan Cheng (hereinafter referred to as "SEC"). (Dong Dec. at ¶ 6.)

5.    As part of the prior Initial Cash Collateral Agreement and related Order, SEC was afforded a 75-day window to investigate the validity, priority, perfection, and enforceability or the amount of the pre-petition claims and liens that have been asserted by ZHBC and if merited to challenge ZHBC's lien claims. The 75-day window closed and SEC failed to file any challenge to the claims of ZHBC in this matter. (Dong Dec. at ¶ 7.)

6.    In order to operate its business and be able to fund a plan of reorganization, because of the interests, claims, liens and/or encumbrances held by ZHBC, and because of the Debtor's need to use Cash Collateral to fund the ordinary and necessary expenses of operating its business, the Debtor and ZHBC, acting through independent legal counsel, negotiated and entered into the Stipulation to allow the Debtor's continued interim use of cash collateral for a period commencing January 1, 2010 through June 30, 2010. The current agreement for use of cash collateral

///

5.

represents a continuance of the existing Cash Collateral Agreement between the parties. (Dong Dec. at ¶¶ 6 -9.)

7. The Debtor has yet to determine if a stand alone plan or the sale of its assets is in the best interests of the Estate and the creditors. In either event, the Debtor believes that continued use of cash collateral is necessary for the preservation of asset value. The Debtor has retained the M&A Group as its investment bankers and advisors to assist the debtor in locating potential buyers for the assets of the Debtor. (Dong Dec. at ¶¶ 2-9.)

## II.

## OUTLINE OF THE TERMS OF THE CASH COLLATERAL STIPULATION

The essential terms of the Cash Collateral Agreement[2] are as follows:

1. The Debtor is authorized to use the Cash Collateral subject to ZHBC's lien in accordance with the Budget (Exhibit "B" thereto) and the terms of this Cash Collateral Agreement. The Debtor's use of Cash Collateral is expressly limited to the categories set forth in the Budget and no budget line item shall be available for the payment of any other line item or expense or for any other purpose whatsoever unless Ordered by the Court or with the prior written consent of ZHBC.

2. Except as provided herein, the Debtor may, during the terms of this interim Order, exceed the amounts set forth in the Budget (Exhibit "B") by 5% for any line item, per month, without further Order of the Court or written consent by ZHBC. Nevertheless, the Debtor covenants that it will undertake its best efforts to minimize its anticipated expenses through June 30, 2010, so as to keep the actual monies spent less than the budgeted sum under Exhibit "B."

3. During the term of the continued Cash Collateral Agreement and Order the Debtor shall continue to provide to ZHBC copies of any Monthly Operating Reports,

---

[2] Any ambiguities or inconsistencies between this description and the terms of the Stipulation shall be resolved by reference to the terms of the Stipulation.

6.

including those filed with the Office of the United States Trustee and provide ZHBC with other financial information as reasonably requested by ZHBC.

4.  The Debtor agrees during the term of the continued Cash Collateral Agreement and Order to continue to maintain adequate insurance in place in accordance with the insurance requirements of the Office of the Untied States Trustee.

5.  Except as set forth in the terms of the continued Cash Collateral Agreement and Order, the parties hereto do not waive or relinquish any of their respective rights, claims, cross-claims, or interests, and hereby preserve all of their offsetting rights and/or defences of any kind or nature that could in any way affect the validity, priority, enforceability, and non-avoidability of the pre-petition indebtedness as between the parties, and each of them.

6.  The United States Bankruptcy Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. Sections 157(b) and 1334. Consideration and approval of this Stipulation constitutes a core proceeding as defined in 28 U.S.C. Section 157(b)(2). The statutory predicates for the relief requested herein are §§ 105(a), 361, 363(c)(2)(B) of the Bankruptcy Code and Rules 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure, and Local bankruptcy Rule 4001-1.

7.  The Debtor is without resources at the present time to compensate its professionals. The continued prosecution of this case is critical to maximizing the value of the Estate's assets and achieving the highest recovery for all creditors, including unsecured creditors. Thus, the ability of the Debtor to continuously compensate its professionals is critical. Pursuant to the Cash Collateral Agreement ZHBC agrees that as part of the Debtor's authorized use of cash collateral, the Debtor shall be entitled to pay the Debtor's General Bankruptcy Court, the Law Offices of James Andrew Hinds, Jr., the Debtor's Special Litigation counsel, Chang & Cote LLC, and the Debtor's accounting professional, Dennis Murphy from its Cash Collateral and to retain cash for payment of professional fees in accordance with the Budget (Exhibit "B" hereto). All said payments are subject to employment of the professionals by the Estate and approval (interim and

1  final) of any payments to professionals by Orders of this Court. The parties agree that
2  the budget for professional fees shall apply to and divided <u>pari passu</u> with any
3  professionals retained by an Official Creditors' Committee in the case. This provision is
4  limited to the term of this Stipulation and related Order and the Debtor reserves the right
5  to request additional funds as needed.

6      8.    The proposed use of Cash Collateral has been negotiated in good faith,
7  through legal counsel for the parties, and at arms' length. The terms of the proposed use
8  of Cash Collateral represent a compromise of competing interests, with the goal of
9  protecting the ongoing value of the Debtor and the Debtor's Estate, and, as a result,
10 these terms are fair and reasonable, reflect the Debtor's exercise of prudent business
11 judgment consistent with its fiduciary duties, and are supported by the record before the
12 Court. (Dong Dec. at ¶ 10.)

13     9.    ZHBC and the Debtor may agree to stipulate to further use of cash
14 collateral. This Stipulation may be <u>extended by mutual written agreement</u> between the
15 parties hereto subject to Court approval.

16     10.    Pursuant to Bankruptcy Rule 4001 notice of the Hearing and the relief
17 requested in the Motion has been (or will be) given to the Office of the United States
18 Trustee, ZHBC, the 20-largest unsecured creditors in the case, and any parties who have
19 requested special notice.

## III.

## **THE DEBTOR SHOULD BE ALLOWED TO USE CASH COLLATERAL AS THE SECURED CREDITOR HAS CONSENTED TO ITS USE AND IS ADEQUATELY PROTECTED**

In this case the Debtor seeks to use the cash collateral of ZHBC. ZHBC, pursuant to the terms of the Cash Collateral Stipulation, and subject to approval by this Court, has consented to the continued use of Cash Collateral in accordance with the terms of the Cash Collateral Agreement. The Debtor has offered adequate protection of the perfected

8.

lien rights of ZHBC upon all of the cash, inventory, equipment, and other items identified under the Credit and Security Agreement and the UCC Financing Statement (collectively referred to as the "Collateral"). No portion of the ZHBC pre-petition claim will be reduced by the adequate protection payments afforded by the Cash Collateral Agreement.

11 U.S.C. § 363 allows a trustee or debtor-in-possession to use "cash collateral" under certain specific circumstances. "Cash collateral" includes, <u>inter alia</u>, cash and cash equivalents in which the estate "and an entity other than the estate" (such as a creditor) has an interest. 11 U.S.C. § 363(a). A debtor may use cash collateral to continue its business operations if each entity having an interest in the cash collateral consents or the court, "after notice and a hearing" authorizes such use. (11 U.S.C. § 363(c)(2).) When cash collateral is used by the debtor, the bankruptcy court has the discretion to provide for "adequate protection" to those entities having an interest in the cash collateral. (11 U.S.C. § 363(e).) The court may order the granting of replacement liens and may also require that cash payments be made to such entities. See, e.g., <u>In re Scottsdale Medical Pavilion</u> (9th Cir. B.A.P. 1993) 159 B.R. 295; <u>In re JKJ Chevrolet, Inc.</u> (Bankr. E.D. Va. 1995) 190 B.R. 542.

11 U.S.C. § 363(a) defines "cash collateral" as cash, negotiable instruments, documents, title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest. Cash collateral also includes and proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in § 552(b) of the bankruptcy Code, whether existing before or after the commencement of a case under Title 11. Here, ZHBC has a properly recorded lien interest under the UCC against the Collateral.

A debtor-in-possession may not use, sell, or lease cash collateral unless each entity that has an interest in such cash collateral consents or the court, after notice and a hearing, approves said use. (11 U.S.C. § 363(b)(2).) Pursuant to § 363(e), at any time, on request of any entity that has an interest in property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the Court, with or without a hearing,

9.

shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

Adequate protection is defined in 11 U.S.C. § 361 as follows:

"When adequate protection is required under Section 362, 363, or 364 of this title, of an interest of an entity in property, such adequate protection may be provided by - - (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under Section 362 of this title, use sale, or lease under Section 363 of this title, or any grant of a lien under Section 364 of this title results in a decrease in the value of such entity's interest in such property; (2) Providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease or grant results in a decrease in the value of such entity's interest in such property; or (3) Granting such other relief, other than entitling such entity to compensation allowable under Section 503(b)(1) of this title as an administrative expense, as will result in the realization of such entity of the indubitable equivalent of such entities interest in such property." (Lexis Nexis 2009.)

In many cases the existence of equity above the secured party's interest ("equity cushion") may provide adequate protection. In re Dunes Casino Hotel (Bankr. D.N.J. 1986) 69 B.R. 784. Whether an equity cushion provides adequate protection to a creditor is determined on a case-by-case basis rather than by mechanical application of a formula. In re Kost (Bankr. D.Wyo. 1989) 102 B.R. 829, 831. Here, the value of the Collateral exceeds the about of the ZHBC pre-petition claim. However, the Debtor is best positioned to collect the A/R and to maximize the value of the inventory for the benefit not only of ZHBC, but for the benefit of all of the constituencies in this case.

In In re Mellor (9th Cir. 1984) 734 F.2d 1396, the Court in discussing the meaning of "adequate protection" stated as follows:

"While the term "adequate protection" is not defined in the Code, 11 U.S.C. §361 sets forth three non-exclusive examples of what may constitute

10.

adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent (citation omitted)." Id at 1400. The Court went on to discuss the existence of an equity cushion as a method of adequate protection stating:

"Although the existence of an equity cushion as a method of adequate protection is not specifically mentioned in section 361, it is the classic form of protection for a secured debt justifying the restraining of lien enforcement by a bankruptcy court (citation omitted). In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection." Id at 1400.

In footnote (e), the court defined equity cushion as the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during time the automatic stay remains in effect. Id. at 1400; see also, In re Roane (Bankr. E.D.Pa. 1981) 8 B.R. 997, 1000, aff'd., 14 B.R. 542 (Bankr. E.D. Pa. 1981).

As set forth above, since ZHBC has a perfected lien upon all of the cash, inventory, equipment, and other items identified under the Credit and Security Agreement and the UCC Financing Statement, the Debtor requires the consent of ZHBC for the use of same in order to continue the operation of its business operations. The Debtor's business appears to be profitable on a post-petition basis. The Debtor has employed the DIP financing approved by this Court for its intended purpose. The Debtor is actively pursuing a potential sale of its assets under § 363. Without regard to whether the Debtor proposes a stand alone plan or a sale of its assets the Debtor still requires interim use of cash collateral. (Dong Dec. at ¶¶ 3 -9.)

The Debtor therefore respectfully requests approval of the Cash Collateral Stipulation with ZHBC. The Budget attached to the Cash Collateral Stipulation (Exhibit "1") shows that the Debtor projects to be able to maintain operations during this interim

11.

period, to make monthly payments to ZHBC, and service its DIP financing. The Debtor's ability to move toward confirmation of the Plan or sale of assets in this case is directly contingent upon approval of use of Cash Collateral at this time.

## IV.

## **NOTICE OF THIS MOTION IS APPROPRIATE UNDER THE CIRCUMSTANCES.**

Section 102(1)(A) of the Bankruptcy Code provides in pertinent part: "(1) after notice and a hearing' . . . means after such notice as is appropriate in the particular circumstances." 11 U.S.C. §102(1)(A). The Debtor believes that under §102(a)(A) of the Bankruptcy Code and General Order 02-02, notice of this Motion to all creditors and parties-in-interest, the Office of the United States Trustee, the Judgment Creditor, counsel for SEC, and all parties who have requested special notice constitutes appropriate notice under the circumstances.

## V.

## **CONCLUSION**

Based on the above, the Debtor respectfully requests that the Court enter an Order authorizing and approving the Cash Collateral Agreement; authorizing the Debtor to execute any additional documentation as maybe necessary to effectuate the Cash Collateral Agreement; authorizing use of cash collateral as set forth herein and in the Cash Collateral Agreement and Budget; and granting such other and further relief as the court may deem just and proper.

Dated: December 19, 2009      Respectfully submitted,
                              JAMES ANDREW HINDS, JR.
                              LAW OFFICES OF JAMES ANDREW HINDS, JR.

                              By:  /s/  James Andrew Hinds, Jr
                                   JAMES ANDREW HINDS, JR.
                              Attorneys for Aeolus Down Inc., Debtor and Debtor-In-Possession

## DECLARATION OF WEI DONG

I, Wei Dong, declare and state as follows:

1. I am now and have been the Chief Executive Officer of the Debtor in this case, Aeolus Down Inc. (hereinafter referred to as "ADI"). I make this declaration as a part of the Debtor's Motion for Approval of Stipulation for Interim Use of Cash Collateral [For the Period January 1, 2010 Through June 30, 2010] (hereinafter referred to as the "Motion"). The matters set forth hereinbelow are made of my own personal knowledge or have been obtained from my personal and business books and records of ADI, which books and records are maintained in the ordinary course of the business affairs of ADI, from data collected by the Debtor and its staff and maintained under the supervision of me and my staff. For the purposes of this Motion, I have been designed as the custodian of records for the Debtor. If called to testify in this action as to the matters set forth in this Declaration, I could and would testify competently thereto.

2. On June 8, 2009 (hereinafter referred to as the "Petition Date"), the Debtor filed its voluntary petition under chapter 11 of Title 11 of the United States Code. Since the Petition Date the Debtor has operated its business as the Debtor-In-Possession under §§ 1107 and 1108 of the Bankruptcy Code. The Petition was filed as an emergency filing to stop the actions of judgment creditors Shaoxing City Maolong Wuzhong Down Products Co., Ltd., and Shui Yan Cheng (hereinafter referred to as "SEC") from dismantling the Debtor's ongoing business operations and seizing cash and inventory of the Debtor.

3. At the time of the filing of the Petition Zhejiang Hengdi Bedding Co., Ltd. and Zhejiang LiuQiao Feather Co. Ltd. (hereinafter collectively referred to as the "ZHBC") had in place a filed UCC lien to perfect its security interest upon all of the cash, inventory, equipment, and other items identified under the Credit and Security Agreement and the UCC Financing Statement (collectively referred to as the "Collateral") pursuant to a Credit and Security Agreement between the parties made effective October 10, 2008. This UCC covers all of the Debtor's personal property assets, intangibles, and receivables.

13.

4. ZHBC is the holder of a pre-petition claim against the Debtor in the amount of approximately $6.049 million (hereinafter referred to as the "Claim"). As previously noted to this Court and parties-in-interest, ZHBC's books show a pre-petition account receivable of approximately $7.5 million based on goods **(1)** in manufacture, **(2)** at the port in China, **(3)** on ships in transit, or **(4)** in the U.S. Customs as of the Petition Date. For purposes of this Cash Collateral Agreement the parties agree that the balance shown on the books of the Debtor will control without prejudice to ZHBC making a different claim in the case.

5. ZHBC claims that, on the basis of **(1)** a Credit and Security Agreement between ZHBC and the Debtor under which ZHBC extended trade credit to the Debtor in return for security over all of the Debtor's assets (as defined in the Credit and Security Agreement) and **(2)** the filing of a financing statement with the California Secretary of State on or about November 26, 2008, to perfect ZHBC's security interest, ZHBC has a perfected lien upon all of the Collateral, which includes all of the cash presently held or which will in the future come into the Debtor's possession (hereinafter referred to as the "Cash Collateral"). While reserving its rights, the Debtor has requested that ZHBC permit it to use Cash Collateral in accordance with the terms and conditions set forth herein.

6. By Order entered on September 4, 2009, this Court approved the Debtor's Fourth Revised and Amended Stipulation for Use of Cash Collateral (hereinafter referred to as the "Initial Cash Collateral Stipulation." The Initial Cash Collateral Stipulation was for the period June 8, 2009 through December 31, 2009. The Initial Cash Collateral Stipulation was subject to extensive court review and questions from judgment creditors, SEC.

7. As part of the Initial Cash Collateral Stipulation and related Order, SEC was afforded a 75-day window to investigate the validity, priority, perfection, and enforceability or the amount of the pre-petition claims and liens that have been asserted by ZHBC and if merited to challenge ZHBC's lien claims. The 75-day window closed and SEC failed to file any challenge to the claims of ZHBC in this matter.

14.

8. In order to operate its business and be able to fund a plan of reorganization, because of the interests, claims, liens and/or encumbrances held by ZHBC, and because of the Debtor's need to use cash collateral to fund the ordinary and necessary expenses of operating its business, the Debtor and ZHBC, acting through independent legal counsel, negotiated and entered into a Cash Collateral Stipulation continuing the Debtor's use of Cash Collateral for the period commencing January 1, 2010 through June 30, 2010. Attached hereto as Exhibit "1" and by this reference incorporated herein as if set forth in full is a true and correct copy of the Stipulation for Interim Use of cash Collateral [for the Period January 1, 2010 through June 30, 2010]. Attached as Exhibit "B" to the Stipulation is a revised Budget agreeable to the Debtor and ZHBC.

9. Absent approval of the Cash Collateral Stipulation (Exhibit "1") ADI will have insufficient cash available to conduct ordinary business operations and to maintain and preserve the value of ADI's Estate. All of ADI's expenditures are to be consistent with the Budget (Exhibit "B" to the Cash Collateral Stipulation), within certain agreed upon variances. ADI believes that the expenses identified in the Budget are reasonable and necessary business expenses that must be paid in order to continue its business, and maintain its value as a going concern. In my opinion ADI will suffer immediate, irreparable injury, including the shutdown of its supply line if it is not allowed to gain access to the use of cash collateral in accordance with the Budget as proposed by the Stipulation.

10. The terms and conditions of the Cash Collateral Agreement were the subject of significant and extensive post-petition negotiations between ADI and ZHBC, and their counsel, and are, in my opinion, fair and reasonable. The Budget takes into consideration the Debtor's need for professionals to aid the Debtor in managing the affairs of the Estate and moving the case to a conclusion. ADI's decision to enter into the Cash Collateral Agreement with ZHBC represents an exercise of management's sound

///

15.

business judgment in the continued operation of ADI's business and preservation of asset value.

I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of December 2009, at Chino, California.

_____
WEI DONG

16.

value.

I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of December 2009, at Chino, California.

_____
WEI DONG

16.

MOTION FOR APPROVAL OF STIPULATION FOR INTERIM USE OF CASH COLLATERAL